# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**MICHELE VUOLO,**

    Plaintiff,

v.                                                      Case No. 4-21cv473 AW/GRJ

**MHM HEALTH PROFESSIONALS, LLC,**

    Defendant.
_____/

## PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff, MICHELE VUOLO, hereby sues Defendant, MHM HEALTH PROFESSIONALS, LLC, and alleges the following:

## NATURE OF THE ACTION

1. This is an action brought under Chapter 448, Florida Statutes.

2. This action involves claims which are, individually, in excess of Thirty Thousand Dollars ($30,000.00), exclusive of costs and interest.

## THE PARTIES

3. At all times pertinent hereto, Plaintiff, MICHELE VUOLO was a resident of the State of Florida and was employed by Defendant. Plaintiff is a protected whistleblower due to her objecting to and/or refusing to participate in practices of Defendant that were in actual or suspected violation of one or more laws,

rules or regulations. Plaintiff suffered retaliation after reporting Defendant's unlawful employment practices.

4. At all times pertinent hereto, Defendant, MHM HEALTH PROFESSIONALS, LLC, was organized and existed under the laws of the State of Florida. At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above. Defendant was Plaintiff's employer as it relates to these claims.

## CONDITIONS PRECEDENT

5. Plaintiff has satisfied all conditions precedent to bringing this action, if any.  This action is timely filed thereafter.

## STATEMENT OF THE ULTIMATE FACTS

6. Plaintiff, a protected whistleblower, began her employment with Defendant on or about December 11, 2018 and held the position of APRN/Site Medical Provider at the time of her wrongful termination June 18, 2020.

7. Despite her stellar work performance during her employment with Defendant, Plaintiff was subjected to disparate treatment, different terms and conditions of employment, and was held to a different standard because she reported Defendant's unlawful employment activities and was subjected to retaliation thereafter.

8. The disparate treatment and retaliation came at the hands of, specifically but not limited to, HSA Jason Scott and Regional Director Krystal Ake.

9. Plaintiff's work performance with Defendant was phenomenal and, prior to her termination, she secured a promotion to APRN/Site Medical Provider, a job which required that she oversee the medical care of over two-thousand inmates, and remain on-call 24/7.

10. In or around March of 2020, Plaintiff reported to HSA Scott and DON White that one of her transgender patients had been threatened with, and was at risk of being raped. Specifically, but without limitation, Plaintiff was concerned about violations of the Prison Rape Elimination Act (PREA). Plaintiff inquired via email to Dr. Hernandez as to how she should accommodate the transgender patient's needs, but Dr. Hernandez never responded. Plaintiff told her supervisor, Dr. Hernandez, that this transgender inmate was at risk of rape and she was concerned about his safety while in Defendant's care.

11. Transgender patients are specifically referenced within PREA, and listed as the seventh of ten risk factors which should be considered during intake. 28 CFR § 115(41)(d)(7).

12. In reaching out to Dr. Hernandez, Plaintiff not only reported sexual harassment of the transgendered inmate, but also sexual harassment which included

a real, credible threat of rape pursuant to 28 CFR § 115(11)(a), and 28 CFR § 115(61)(c).

13. 28 CFR § 115(22)(a) clearly requires referrals of allegations, including allegations of sexual harassment, for investigations. 28 CFR § 115(62) requires that Defendant take "immediate action to protect the inmate" upon learning that an inmate is subject to a substantial risk of imminent sexual abuse.

14. Defendant took no action, immediate or otherwise, in clear violation of PREA.

15. Plaintiff not only reported, through her chain of command (which included Dr. Hernandez), that the transgender patient in question was at risk of being raped, she also reported Defendant's failure to act, which was a PREA violation in itself.

16. Despite Plaintiff's report, Defendant took no action to protect the inmate in question, in clear violation of PREA. Thereafter, Plaintiff's employment environment began to deteriorate, and there were clear acts of retaliation against her. These acts of retaliation are not only a violation of Chapter 448, but also 28 CFR § 115(67)(a), which clearly prohibits retaliation against staff who report sexual abuse or sexual harassment.

17. Plaintiff almost immediately began suffering retaliation following her reports, which include but are not limited to her report regarding the PREA violation.

The temporal proximity between Plaintiff's reports and the retaliation she experienced strongly suggests that the two actions are related. The retaliatory acts preceding termination include but are not limited to greater scrutiny in the form of micromanagement –Plaintiff was no afforded the same freedom to conduct herself as other employees were.

18. In or around May, 2020, (the month prior to the termination of Plaintiff's employment) Regional Nursing supervisors, including Nurse T. Thomas, conducted an audit at Defendant's facility where Plaintiff was employed. Nurse Thomas assessed a patient to whom Plaintiff previously prescribed antibiotics. The patient's wound was improving under the antibiotic regimen that Plaintiff prescribed. Regardless, Nurse Thomas changed the orders, and did not notify Plaintiff of the change until after it had been made. Plaintiff subsequently cultured the wound and determined that the prescription should not have been changed and prescribed the original antibiotics again.

19. Thomas' actions undermined Plaintiff's authority and placed the patient in a more compromising position. Thomas' actions were also in violation of the Nursing Practice Act *(Fla. Stat. Chapter 464)*, and below the standard of care required by the Act.

20. The purpose of the Nurse Practice Act is codified at Fla. Stat. Ann. § 464.002, which states that the act exists to ensure that every nurse practicing in the

state meets minimum requirements for safe practice. Because depriving a patient of a necessary and successful antibiotic regimen was neither acceptable or appropriate, Thomas violated the Nurse Practice Act by failing to provide a minimum standard of care. Thomas' actions were not only a *failure* to provide a minimum standard of care –Thomas took affirmative steps to remove the care which Plaintiff previously prescribed.

21. Plaintiff reported to HSA Scott and DON White that Thomas interrupted the care Plaintiff provided to the patient, and that Thomas' actions were below the standard of care set forth in the Nurse Practice Act, yet Defendant took no corrective action.

22. Plaintiff also reported to Hernandez, Ake, and Scott that Thomas' actions were outside the scope of her nursing practice, and in violation of Fla. Stat. Ann. § 464.0095(17) as a result. Thomas was a registered nurse, and junior to Plaintiff at the time she unilaterally changed the patient's medication regimen. As such, Thomas had no authority to make a unilateral change without consulting Plaintiff, and acted outside the scope of her practice in doing so.

23. Plaintiff almost immediately began suffering greater retaliation following her reports, which include but are not limited to her report regarding Thomas' violation of the Nurse Practice Act. The temporal proximity between

Plaintiff's reports and the retaliation she experienced strongly suggests that the two actions are related.

24. When Plaintiff reported to work on June 8, 2020, Scott called her into his office with DON White. Scott then informed Plaintiff she was suspended pending investigation and demanded Plaintiff's keys and badge. Defendant then escorted Plaintiff off of the property.

25. On or around June 19, 2020, Scott and Ake called Plaintiff and wrongfully terminated her employment in retaliation for her protected activities, including her reports of actual or suspected violations of laws, rules and/or regulations.

26. Defendant did not give Plaintiff the opportunity to take a demotion, but permitted other employees to take demotions when they were accused of wrongdoing.

27. Plaintiff retained the undersigned to represent her interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the laws referenced above.

## COUNT I
## PRIVATE WHISTLEBLOWER RETALIATION

28. Paragraphs 1 through 27 are incorporated herein by reference.

29. This is an action brought under §448.101, et seq., Florida Statutes.

30. As set forth in greater detail above, during the course of Plaintiff's employment, Plaintiff objected to certain practices of Defendant which constituted actual or suspected violations of laws, rules and/or regulations.

31. As a result of Plaintiff' objections, Plaintiff's employment was terminated.

32. Plaintiff was terminated because she engaged in protected behavior. Specifically, Plaintiff objected to, or refused to participate in, any activity, policy, or practice of Defendant which is in actual or suspected violation of a law, rule, or regulation and/or reported the violation and gave Defendant an opportunity to correct the problem. Instead of correcting the problem, Plaintiff's work environment became more unbearable, and Plaintiff's employment was ultimately terminated due to her reports.

33. The disclosures made by Plaintiff are protected under §448.102, Florida Statutes.

34. As a direct and proximate cause of Plaintiff's participation in the Whistle Blowing activities identified herein, Plaintiff has been damaged, which damages include but are not limited to lost wages and other tangible and intangible damages, and every other kind of damage allowed by law. Plaintiff has also suffered emotional pain and suffering damages and other intangible damages which continue today. Plaintiff is entitled to injunctive/equitable relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a) that process issue and this Court take jurisdiction over this case;

(b) that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c) enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d) enter judgment against Defendant and for Plaintiff awarding all legally-available damages for emotional pain and suffering to Plaintiff from Defendant for Defendant's violations of law enumerated herein.

(e) enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

    (f)    enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

    (g)    award Plaintiff interest where appropriate; and

    (h)    grant such other further relief as being just and proper under the circumstances, including but not limited to reinstatement.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

DATED this 4th day of February, 2022.

                        Respectfully submitted,

                        _____
                        Adam Ellis; FBN 35628
                        MARIE A. MATTOX, P. A.
                        203 North Gadsden Street
                        Tallahassee, FL   32301
                        Telephone: (850) 383-4800
                        Facsimile:  (850) 383-4801
                        adam@mattoxlaw.com
                        ATTORNEYS FOR PLAINTIFF